RICHARD L. WARREN v. JOSEPH HARRIS COMPANY, INC., W. S. CLARK AND SONS, INC. AND MURRY (MONK) FULCHER

———————

JAMES A. PERRY v. JOSEPH HARRIS COMPANY, INC., W. S. CLARK AND SONS, INC. AND MURRY (MONK) FULCHER

No. 833SC534

(Filed 17 April 1984)

**Sales §§ 17.1, 17.2; Uniform Commercial Code §§ 11, 14— cabbage seeds—breach of express and implied warranties**

Plaintiffs' evidence was sufficient for the jury on issues of defendants' breach of an express warranty that cabbage seeds sold to plaintiffs were suitable for fall planting and winter growth in Carteret County and of defendants' breach of implied warranty of fitness of the seeds for a particular purpose. G.S. 25-2-313; G.S. 25-2-315.

APPEAL by plaintiffs from *Lane, Judge.* Judgment entered 17 November 1982 in Superior Court, CARTERET County. Heard in the Court of Appeals 3 April 1984.

In these two civil cases, consolidated for trial, plaintiffs seek to recover damages from the defendants for their alleged breach of express and implied warranty. Summary judgment for defendant Joseph Harris Company, Inc., was entered in both cases on 17 September 1981. At the close of plaintiffs' evidence, defendants' motion for a directed verdict was allowed. Plaintiffs appealed.

*Wheatly, Wheatly & Nobles, P.A., by C. R. Wheatly, III, for plaintiffs, appellants.*

*William W. Aycock, Jr., for defendants W. S. Clark and Sons, Inc., and Murry (Monk) Fulcher, appellees.*

HEDRICK, Judge.

Plaintiffs have attempted to bring forward and argue numerous exceptions relating to the exclusion of evidence. Plaintiffs have, however, failed to comply with Rule 28, North Carolina Rules of Appellate Procedure, in regard to preparation of their brief. Thus these exceptions present no question for review.

Plaintiffs also assign error to the court's ruling directing a verdict for defendants. This assignment of error is preserved for review pursuant to Rule 10, North Carolina Rules of Appellate Procedure, which in pertinent part provides: "Upon any appeal duly taken from a final judgment any party to the appeal may present for review, by properly raising them in his brief, the questions whether the judgment is supported by the verdict or by the findings of fact and conclusions of law . . . notwithstanding the absence of exceptions or assignments of error in the record on appeal."

Evidence introduced at trial, considered in the light most favorable to plaintiffs, tends to show the following:

Plaintiffs Richard Warren and James A. Perry were, at the time of the events in question, cabbage farmers in Carteret County. Defendant W. S. Clark and Sons, Inc., is a North Carolina corporation engaged in the retail sale of agricultural products. De-

fendant Murry (Monk) Fulcher is an employee of defendant W. S. Clark and Sons.

Cabbage is grown in Carteret County in two ways. First, seed may be planted in seed beds in the fall months, and the young plants transferred to the fields in the winter months. When cabbage is grown this way, the types of seed most commonly used in this part of the state are known as Rio Verde and A-C 5. Certain other types of seed will not produce a marketable cabbage head when planted under these conditions. These types, because of the weather conditions in Carteret County, will instead tend to "flower out," that is, a stalk grows through the center of the cabbage, the head becomes soft, and the plant goes to seed. Carteret County farmers refer to kinds of cabbage that do not tend to "flower out" when planted in the fall by saying that these types "winter over"; that is, these types will produce a marketable head of cabbage despite Carteret County weather conditions.

The second way in which cabbage is grown in Carteret County does not involve growing cabbage from seed. Instead, the young plants are ordered from Florida and planted directly in the fields.

In August 1979 plaintiff Richard Warren went to W. S. Clark and Sons and spoke with Murry Fulcher. Mr. Fulcher informed plaintiff that there was a shortage of Rio Verde and A-C 5 seed, and offered to sell plaintiff "Sanibel" seed instead. Plaintiff testified as follows:

So I asked him did he know if these cabbage would winter over or had any experience with them, because I had never heard of this type cabbage.

Mr. Fulcher then called the New York seed company that sold the seed. Plaintiff testified:

I asked Mr. Fulcher to ask the man or the woman, ever who it was he was talking to, to be sure to ask him if these cabbage seed would winter over in eastern North Carolina, specifically Carteret County, the area I was concerned with. Mr. Fulcher asked this question and assured me that these cabbage would winter over and do as good, if not better, than the AC 5 or the Rio Verde. Therefore, based upon this con-

versation and the information Mr. Fulcher had received, I ordered 20 pounds of the Sanibel seeds.

. . .

I told Mr. Fulcher that if he didn't really know anything about it and he was not sure of these Sanibel seeds, not to even order them, that I would wait and get Florida plants, what I know I could make a crop with. And he stated these cabbage would be all right. Therefore we ordered the seed.

Plaintiff also testified about a later conversation with Mr. Fulcher, in which the following interchange occurred:

I said, "Monk, now are you sure, absolutely sure, have no doubt in your mind that these seeds are going to do well in eastern North Carolina and Carteret County?" And Mr. Fulcher replied to me, said, "I'll guarantee this seed will be as good, if not better, than the AC 5's or the Rio Verde."

Plaintiff planted the seed on 28 September and transferred the plants to fields in January, 1980. In early March, plaintiff observed that the plants "were beginning to look funny." Plaintiff informed Mr. Fulcher of the plants' unusual appearance and his concern that the cabbage was going to "run up." Plaintiff testified:

I told him, I said, "Now, Monk, if there's any doubt in your mind at this point, I have still got time to order plants from Florida and still raise a crop." He said, "No," said, "I don't think you have anything to worry about," said, "that's the way these cabbage grow." Said, "They grow funny and different than your other type cabbage."

As a result of this conversation, plaintiff did not order plants from Florida. More than 50 per cent of the cabbages he raised from Sanibel seed went to seed and were thus unmarketable.

Plaintiff James Perry testified as follows:

I asked Monk, I said, "Monk, Richard told me you found some cabbage seed," and he said, "Yes, I couldn't find any Rio Verde or AC 5 but I found a cabbage called Sanibel that I believe will grow just as good a crop or not better than the AC 5 or the Rio Verde, and the only stipulation on them is

you can't put them quite as far apart as you do the Rio Verde or they will get big on you and if they get too big you can't market them." So I said, "Murry, you know the type of weather we have in Carteret County." He said, "Jimmy, I believe these cabbage is going to be the cabbage of the future for you boys. You put more plants per acre and I believe they will produce more." I said, "Okay, I want you to order me five pounds."

Mr. Perry also testified to a later conversation with Mr. Fulcher:

I called him and I told him, I said, "Monk, these cabbage don't look right," and I said, "Now we still got time to get the cabbage plants out of Florida." And I said, "What are you thinking about?" He said, "Jimmy, I think that's the way to go. I wouldn't worry with them. I believe they'll be all right." So I didn't do anything.

Plaintiffs argue that this evidence, considered in the light most favorable to them, is sufficient to raise a question for the jury as to whether defendants expressly warranted the Sanibel seed. They further contend that there was sufficient evidence of an implied warranty of fitness for a particular purpose to require submission of this issue to the jury.

N.C. Gen. Stat. Sec. 25-2-313 provides:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or

> "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Whether the parties to the transaction have created an express warranty is a question of fact. *Pake v. Byrd*, 55 N.C. App. 551, 286 S.E. 2d 588 (1982).

N.C. Gen. Stat. Sec. 25-2-315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose.

Our examination of the record reveals ample evidence from which the jury might find that Mr. Fulcher made an "affirmation of fact or promise" to plaintiffs, that such affirmation related to the goods, that his representations became "part of the basis of the bargain," and that the goods did not conform to the affirmation or promise. Furthermore, there was substantial evidence that Mr. Fulcher knew at the time of sale that the goods were required for a "particular purpose," *to wit*, fall planting and winter growth, that plaintiffs relied on Mr. Fulcher's skill or judgment in selecting suitable goods, and that Mr. Fulcher was aware of their reliance. Because we believe plaintiffs' evidence was sufficient to raise an issue as to the existence of an express warranty and of an implied warranty of fitness for a particular purpose, we hold the trial court erred in directing a verdict for defendants. The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

Judges HILL and JOHNSON concur.